IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ROBERTA LOVE                                                                                         PLAINTIFF

V.                                                                           CIVIL ACTION NO: 3:19-CV-250-DAS

COMMISSIONER OF SOCIAL SECURITY                                                    DEFENDANT

### MEMORANDUM OPINION

The plaintiff has appealed the decision of the Social Security Administration denying her application for disability benefits. After working for thirty-seven of the preceding forty years, Roberta Love quit work almost a year after being diagnosed with post-herpetic neuralgia because of the pain. The ALJ relied upon the non-examining state agency doctors to conclude that not only was Love not disabled but that she did not have a severe impairment.

### ANALYSIS

The plaintiff asserts three errors. First, she argues the ALJ erred when he found she did not have a severe impairment. Second, she asserts the Appeals Council failed to properly consider medical evidence submitted after the hearing date. Finally, she argues the ALJ erred in his assessment of the medical source statement of the plaintiff's treating physician.

The court agrees that the ALJ erred when he found Love's postherpetic neuralgia was not a severe condition. Step Two functions only as an early screening to identify and eliminate the frivolous. It functions as a "pass/fail" system, rather than attempting meaningful evaluation of an impairment in any common sense meaning of the word severe. Thus, a finding of "severity" at Step Two functions to adjudicate that the claim is not baseless, frivolous, or otherwise clearly lacking in merit.

1

The court also has considered the nature of postherpetic neuralgia. The genesis of postherpetic neuralgia can be and in Love's case is objectively verifiable. When the herpes zoster virus that causes chicken pox in children recurs in adults, it causes shingles. Most patients recover, but "many, especially the elderly, have postherpetic neuralgia, which may persist for months or years. The pain of postherpetic neuralgia may be sharp and intermittent or constant and may be debilitating." *Samuels v. Barnhart*, 2003 WL 21108321, at *2 (S.D.N.Y. May 14, 2003)(citing *The Merck Manual of Diagnosis and Therapy* 1294, 1295 (17th ed.1999)). Love reported both her sleep and her work were affected by the pain even before she stopped working. The typical diagnostic process is physical examination, and Love had shingles with rashes and blisters that left her scarred. This is the underlying objectively verified medical condition which can lead to post-herpetic neuralgia. The symptom that defines post-herpetic neuralgia is pain, and it is widely accepted that some patient's pain will not clear with the rash and blisters. While there is an objectively verifiable condition that can lead to this neuralgia, the pain that the condition can cause is, of course, not subject to objective testing.

Love testified, however, that the pain was constant and that medication did not take the pain away. In the record Love provided numerous instances during which she complained of significant pain. Love's physician opined also that the condition was painful and impacted her ability to work. The ALJ rejected this opinion based in part on the "very limited treatment history with the plaintiff," but he then relied on the state agency physicians who did not see her at all. The state agency physicians also based their findings in part on their position that Love's impairment was non-severe so long as she had proper medication. While Love's testimony directly contradicts this statement, it is also relevant to the court that on more than one occasion, Love was unable to afford any medication. *See Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) ("To a poor person,

2

a medicine that he cannot afford to buy does not exist."). Finally, Love worked for thirty-seven of the preceding forty years, a fact that goes a long way toward showing her complaints were neither baseless nor frivolous. Consequently, the court finds the ALJ erred in finding Love's post-herpetic neuralgia was not a severe impairment.

The plaintiff also argues that the Appeals Council erred in not remanding the case to the ALJ for consideration of Dr. Blue's post-hearing letter addressing Love's current condition, continuing treatment, and the duration of her impairment. Because the case is being remanded, this argument is now moot, and the administration will consider it on remand.

Finally, the plaintiff argues the ALJ erred in his assessment of the opinions of the treating physician. Because the case is being remanded, Dr. Blue's opinions will need to be reconsidered, along with any further treatment records or opinions.

The decision of the Commissioner is reversed, and the case remanded for further proceedings in accordance with this opinion.

**THIS** the 17th day of March, 2021.

/s/ David A. Sanders
**U.S. MAGISTRATE JUDGE**